IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| Sarah Elizabeth Flanders,<br>    Petitioner, | )<br>)<br>) |
| v. | )    1:22cv439 (AJT/JFA)<br>) |
| Commonwealth of Virginia,<br>    Respondent.[1] | )<br>)<br>) |

## MEMORANDUM OPINION

Sarah Elizabeth Flanders ("Petitioner" or "Flanders"), a Virginia inmate proceeding *pro se*, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, which challenges the validity of her March 1, 2017 convictions in the Circuit Court of the City of Virginia Beach, Virginia for felony homicide and hit and run. *Commonwealth v. Flanders*, Case Nos. CR15-1523; CR15-1558. The Respondent filed a Rule 5 Answer and a Motion to Dismiss, with supporting briefs and exhibits [Dkt. Nos. 28-30][2] and Petitioner has exercised her right to file responsive materials pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975) and Local Rule 7(K) to the motion to dismiss. [Dkt. No. 22, 33].[3] Accordingly, this matter is now ripe for disposition. For the reasons that follow, the respondent's Motion to Dismiss must be granted and the petition will be dismissed with prejudice.

---

[1] The Court grants the respondent's motion to substitute Harold W. Clarke, the Director of the Virginia Department of Corrections, as the proper party respondent in this matter, and the docket will be so amended.

[2] Respondent's original Rule 5 Answer and a Motion to Dismiss was dismissed without prejudice on May 3, 2023 because it did not comply with the requirements of Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts. [Dkt. No. 27] (citing *Sanford v. Clarke*, 52 F.4th 582, 584, 586 (4th Cir. 2022)). The Court has considered the reply in opposition to the motion to dismiss Petitioner filed on December 8, 2022 [Dkt. No. 22], as well as the reply filed on June 20, 2023. [Dkt. No. 33].

[3] Flanders filed a notice of appeal on August 15, 2022. [Dkt. No. 9]. On March 21, 2023, the Fourth Circuit dismissed the appeal, and its mandate issued on April 12, 2023. [Dkt. Nos. 24-25, 26].

## I. Procedural History

The Petitioner is detained pursuant to the March 1, 2017 judgment of the Circuit Court of the City of Virginia Beach. Flanders was convicted of felony homicide in violation of Virginia Code §§ 18.2-32 and 18.2-33, and hit and run with personal injury in violation of Virginia Code § 46.2-894. She was sentenced to a total of 35 years of in prison, with 13 years suspended, for an active period of incarceration of 22 years. [Dkt. No. 30-1].

Petitioner, by counsel, filed a petition for appeal in the Court of Appeals of Virginia alleging both a violation of her right against Double Jeopardy and that the Commonwealth had not proven the victim's death was within the *res gestae* of the underlying felony. *Flanders v. Commonwealth*, Record No. 0486-17-1. The court granted the petition for appeal and affirmed her convictions. *Flanders v. Commonwealth*, 2018 Va. App. LEXIS 184 (Va. Ct. App. July 10, 2018). The court summarized the evidence as follows:

> On September 20, 2014, shortly after 5:15 a.m., a woman, later identified as the defendant, drove a red Dodge Durango onto a Dominion Power job site. She told a worker, "somebody needed to call 911. There was a guy laying back there behind the school bleeding from his head." She told the site supervisor, Johnny Burdette, that it "looked like someone had been run over" and "was bleeding to death." She then drove away.
>
> Burdette drove to the school [and] found a man lying half on and half off the curb of the parking lot. Burdette recognized the man as the person who had walked through the job site about ten minutes earlier. The man was in obvious pain and lost consciousness before rescue workers arrived. He later regained consciousness and identified himself as Rick Pentz.... [and] died about four hours later at the hospital from blunt force trauma.
>
> The police recovered Pentz's cell phone at the scene. It revealed that he had called the defendant earlier that morning. When interviewed, the defendant said that she and Pentz had been friends for six years and had once lived together at her mother's house across the street from the school. The defendant admitted she had been driving the Durango but denied any involvement in Pentz's death. She remarked, "this was crazy and she thought that he was going to make it," after the officers had left her alone in the interview room.
>
> The police found Pentz's blood on the front bumper of the Durango and yellow paint on the inside of the front and rear driver's side tires. That paint was consistent

> with the paint on the curb where Pentz was found. The defendant's DNA was on the steering wheel and gearshift. The Dominion worker with whom the driver first spoke identified her as that driver. Two days earlier the defendant and Pentz also had a roadside altercation which the police had investigated.

*Flanders*, 2018 Va. App. LEXIS 184, *1-3. The court denied Flanders petition for rehearing en banc on August 20, 2018. [Dkt. No. 30-2 at 9].

Flanders, by counsel, filed a petition for appeal in the Supreme Court of Virginia raising only a single assignment of error: "whether felony hit and run may serve as a predicate offense for a felony-homicide conviction." *Flanders v. Commonwealth*, 298 Va. 345, 350, 838 S.E.2d 51, 54 (2020). The court granted the appeal and following briefing and argument, the court affirmed the trial court on February 13, 2020. *Id.* at 365, 838 S.E.2d at 63. Flanders did not file any state post-conviction litigation.[4]

## II. Petitioner's Current Claims

Flanders' federal habeas corpus petition was filed on April 12, 2022, the date she certifies she placed it into the prison mailing system. [Dkt. No. 1 at 15].[5] The petition raises four grounds:[6]

1) "I was taken to jail without evidence against me. No warrant or indictment was out on me." [Dkt. No. 1 at 5].
2) "Faulty indictments/Double Jeopardy. Never to get charged 2 with the same charge." [*Id.* at 7].
3) "Murder charge was not certified in General District Court." [*Id.* at 8].
4) "The way that Richard Pentz died." [*Id.* at 9].

---

[4] Citations to the trial record, which were part of the appendix on appeal, are designated "VSCT at ___."

[5] *See Houston v. Lack*, 487 U.S. 266, 276 (1988) (a pleading is deemed "filed at the time petitioner delivered it to the prison authorities for forwarding to the court clerk").

[6] In reviewing a federal habeas petition, a district "court must consider claims as they are presented in the petition, reviewing them under the applicable standard....[and it is] the district court['s] duty to consider only the specific claims raised in a § 2254 petition." *See Folkes v. Nelsen*, 34 F.4th 258, 269 (4th Cir. 2022) (citations omitted); *Frey v. Schuetzle*, 78 F.3d 359, 360-61 (8th Cir. 1996) (district courts adjudicate only those claims upon which the petitioner seeks relief and do not decide claims upon which the petitioner never intended to seek relief).

3

### III. Statute of Limitations

A petition for a writ of habeas corpus must be dismissed if filed later than one year after (1) the judgment becomes final; (2) any state-created impediment to filing a petition is removed; (3) the United States Supreme Court recognizes the constitutional right asserted; or (4) the factual predicate of the claim could have been discovered with due diligence. 28 U.S.C. § 2244(d)(1)(A)-(D). Flanders does not allege any state impediments, a newly recognized constitutional right, or newly discovered evidence. Thus, her limitations period should be calculated from the date on which her convictions became final.

Flanders direct appeal proceedings concluded on February 13, 2020, when her convictions were affirmed by the Supreme Court of Virginia. Although Flanders did not file a petition for a writ of certiorari, her convictions became final for federal habeas purposes on July 13, 2020, the date on which her time to petition for an appeal to the Supreme Court of the United States expired. *See Miscellaneous Order*, 589 U.S. ___, 2020 U.S. LEXIS 1643 (U.S. March 19, 2020) (ordering "the deadline to file any petition for a writ of certiorari due on or after the date of this order is extended to 150 days from the date of the lower court judgment, order denying discretionary review, or order denying a timely petition for rehearing"), *rescinded, Miscellaneous Order*, 594 U.S. ___, 2021 U.S. LEXIS 3591 (U.S. July 19, 2021); *see also Gonzalez v. Thaler*, 565 U.S. 134, 149 (2012) (holding that, under § 2244(d)(1)(A), a judgment becomes final "when the time for pursuing direct review in [the Supreme Court], or in state court, expires").

The petitioner had one year from that date, or until July 13, 2021, to file her federal habeas petition. Flanders' current petition was filed, at the earliest, on April 12, 2022, the day her petition was placed into the institutional mailing system to be sent to this Court. [Dkt. No. 1 at 15]. Flanders' current petition, therefore, was filed nine months after statute of limitations expired.

4

Petitioner is not entitled to statutory tolling of the statute of limitations because she did not file any state-post conviction litigation.[7] Accordingly, her petition is barred from review unless she demonstrates some equitable exception.

A habeas petitioner may be permitted to file a federal habeas petition out of time if she can establish that she is entitled to equitable tolling. Equitable tolling is available in federal habeas only where the petitioner shows: (1) she pursued her rights diligently; and (2) some extraordinary circumstance prevented her from timely filing her habeas petition. *See Holland v. Florida*, 560 U.S. 631, 649 (2010). "Equitable tolling is an exceedingly narrow window of relief." *Finch v. Miller*, 491 F.3d 424, 427-28 (8th Cir. 2007) (citation omitted). Indeed, equitable tolling is available only in "rare instances where – due to circumstances external to the party's own conduct – it would be unconscionable to enforce the limitation period against the party and gross injustice would result." *Green v. Johnson*, 515 F.3d 290, 304 (4th Cir. 2008). The petitioner "bears the burden of demonstrating that [she] is entitled to equitable tolling." *Vroman v. Brigano*, 346 F.3d 598, 604 (4th Cir. 2003). Flanders has not satisfied that burden.

Flanders argues that her petition is timely because she did not realize until after she obtained her file from her trial attorney that her rights had been violated, which she confirmed with an attorney, Dale Jensen. [Dkt. No. 1 at 13]. Jensen's "Case Review Report for Sarah Flanders" is dated February 25, 2021. [Dkt. No. 1-1 at 16]. The federal statute of limitations did not expire until July 13, 2021, which means Flanders had over four months after Jensen's report was prepared to file her federal habeas petition.

---

[7] An attachment to the federal petition indicates Flanders filed a letter in the United States District Court for the District of Columbia ("D.C. district court"), which was dismissed for lack of jurisdiction on December 16, 2021. [Dkt. No. 1-1 at 3-4]. The online records of the D.C. district court indicate that Flanders, proceeding *pro se*, executed a federal habeas petition on November 15, 2021, and that the petition was filed on December 7, 2021. *Flanders v. Commonwealth of Virginia*, No. 1:21-cv-3224. Further, the federal petition filed in the D.C. district court was filed more than four months after the federal statute of limitations had already expired.

5

Moreover, the facts underlying Flanders' claims were available to her by the time her trial concluded on February 21, 2017 when she was sentenced. Flanders' first three claims relate to purported defects in the charging documents and her fourth claim appears to allege the victim died from a heart attack and not because she struck him with an SUV. (Pet. 5-9). Accordingly, regardless of what information was conveyed to her by her post-conviction lawyer, her claims could have been brought within the statutory period. As explained below, the signed indictments were filed with the trial record; the warrant charging hit and run was signed and filed with the trial record; as explained herein, there was no valid double jeopardy claim; the autopsy report, which states the cause of death was due to "blunt impact torso," was introduced at trial; and "under Virginia law, 'it is well-established that the Commonwealth may obtain an indictment from the grand jury charging an offense for which the district court has previously found no probable cause.'" *Felton v. Clarke*, No. 1:19cv1216, 2020 U.S. Dist. LEXIS 121899, *28 (E.D. Va. July 10, 2020) (citing *Herrington v. Commonwealth*, 291 Va. 181, 185, 781 S.E.2d 561 (2016) (citing *Moore v. Commonwealth*, 218 Va. 388, 394, 237 S.E.2d 187 (1977)), *appeal dismissed*, 848 F. App'x 587 (4th Cir. 2021).

To the extent petitioner asserts she did not understand the legal significance of these facts, her lack of knowledge of the law is not the type of extraordinary circumstance that justifies equitable tolling. *See United States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004) (a *pro se* petitioner's ignorance and misconceptions about the operation of the statute of limitations do not justify equitable tolling because they are not extraordinary circumstances beyond the petitioner's control). The record establishes that Flanders failed to diligently pursue her claims and she has not demonstrated that some extraordinary circumstance prevented her from filing in a timely manner. The petition is therefore barred from federal review by the statute of limitations. *See, e.g., Green*,

515 F.3d at 304-05 (affirming dismissal of petition as untimely and finding by district court that the petitioner was not diligent).

Even if Flanders' petition was timely, all of her federal claims are defaulted because she failed to present any of the claims to the Supreme Court of Virginia, which renders them simultaneously exhausted and defaulted, and should be dismissed.

### III. Exhaustion and Default

"[A] federal court may not grant a writ of habeas corpus to a petitioner in state custody unless the petitioner has first exhausted his state remedies by presenting his claims to the highest state court." *Baker v. Corcoran*, 220 F.3d 276, 288 (4th Cir. 2000). In order to meet the exhaustion requirement, a petitioner "must have presented to the state court 'both the operative facts and the controlling legal principles.'" *Kasi v. Angelone*, 300 F.3d 487, 501-02 (4th Cir. 2002) (quoting *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997)).

A petitioner must present her federal claims to the appropriate state court in the manner required by the state court, so as to give the state court "a meaningful opportunity to consider allegations of legal error." *Vasquez v. Hillery*, 474 U.S. 254, 257 (1986). A state prisoner does not "fairly present" a claim for exhaustion purposes when the claim is raised in "a procedural context in which its merits will not be considered." *Castille v. Peoples*, 489 U.S. 346, 351 (1989).

The records of Flanders' trial and appeal establish that she has not exhausted the claims in her federal habeas petition, which renders her claims simultaneously exhausted and defaulted because all of her claims would be procedurally barred under state law if she now attempted to present them to the state court. *See Baker*, 220 F.3d at 288 ("A claim that has not been presented to the highest state court nevertheless maybe treated as exhausted if it is clear that the claim would be procedurally barred under state law if the petitioner attempted to present it to the state court.").

7

If Flanders returned to state court and attempted to present her claims to the Supreme Court of Virginia in a new state petition, her claims would be untimely pursuant to Virginia Code § 8.01-654(A)(2), and defaulted pursuant to the rule of *Slayton v. Parrigan*, 215 Va. 27, 205 S.E.2d 680 (1974).[8]

Federal courts may not review defaulted claims absent a showing of cause and prejudice or a fundamental miscarriage of justice, such as actual innocence. *Harris v. Reed*, 489 U.S. 255, 260 (1989). The existence of cause ordinarily turns upon a showing of (1) a denial of effective assistance of counsel, (2) a factor external to the defense which impeded compliance with the state procedural rule, or (3) the novelty of the claim. *See Coleman v. Thompson*, 501 U.S. 722, 753-54 (1991); *Clozza v. Murray*, 913 F.2d 1092, 1104 (4th Cir. 1990); *Clanton v. Muncy*, 845 F.2d 1238, 1241-42 (4th Cir. 1988). A court need not consider the issue of prejudice in the absence of cause. *See Kornahrens v. Evatt*, 66 F.3d 1350, 1359 (4th Cir. 1995).

Flanders has not established cause to excuse her default, and the record does not reveal any. Indeed, Flanders' "*pro se* status and [her] corresponding lack of awareness and training on legal issues do not constitute adequate cause" to excuse a default of her claims. *Rodriguez v. Maynard*, 948 F.2d 684, 687-88 (10th Cir. 1991) (explaining that the petitioner's "lack of awareness and training on legal issues d[id] not constitute adequate cause" for his failure to include the claims in his prior federal habeas petition because "[t]he factual and legal bases for [the

---

[8] Virginia Code § 8.01-654(A)(2) is an adequate and independent bar that precludes federal review of a claim. *See Sparrow v. Dir., Dep't of Corr.*, 439 F. Supp. 2d 584, 588 (E.D. Va. 2006); *see, e.g., Baker v. Clarke*, 95 F. Supp. 3d 913, 917-18 (E.D. Va. 2015) ("many courts have held, Virginia Code § 8.01-654(A)(2) constitutes an adequate and independent state-law procedural rule, as it is a statutory rule that is not tied to the federal Constitution.") (citation omitted). The Fourth Circuit has recognized that "the procedural default rule set forth in *Slayton* constitutes an adequate and independent state law ground for decision" that bars federal review of the merits of a claim absent cause and prejudice or a miscarriage of justice. *Wright v. Angelone*, 151 F.3d 151, 159-60 (4th Cir. 1998) (quoting *Mu'Min v. Pruett*, 125 F.3d 192, 196-97 (4th Cir. 1997)).

8

petitioner's] new claims existed at the time he filed his first federal habeas petition") (citing Rule 9, Rules Governing Section 2254 Cases, 28 U.S.C. § 2254).

The "fundamental miscarriage of justice" exception applies where "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986). "[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar [or] expiration of the statute of limitations." *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). "[T]enable actual-innocence gateway pleas," however, "are rare." *Id.* "[P]risoners asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *House v. Bell*, 547 U.S. 518, 536-37 (2006) (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

"To be credible, such a claim requires petitioner to support his allegations of constitutional error with *new* reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324 (emphasis added). Assessment of a claim of actual innocence by a federal habeas court, however, "is not limited to such evidence." *House*, 547 U.S. at 537. Instead, "the habeas court must consider 'all the evidence,' old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under 'rules of admissibility that would govern at trial.'" *Id.* at 538 (citation omitted). "Based on this total record, the court must make 'a probabilistic determination about what reasonable, properly instructed jurors would do.'" *Id.* (citation omitted). The actual innocence standard is "demanding and permits review only in the 'extraordinary' case." *Id.* (citation omitted). Flanders claims are not premised upon new evidence, and the summary of

9

the trial evidence, *supra* at 2, establishes no miscarriage of justice has occurred.[9] All of Flanders claims are without merit.

Flanders alleges that "there was no warrant or indictment." [Dkt. No. 1 at 5]. The record establishes that on May 18, 2015, the grand jury returned indictments for murder in violation of Virginia Code §§ 18.2-33 and 18.2-32; and for hit and run in violation of Virginia Code § 46.2-894. The indictments are each marked "A true Bill," and are signed by the grand jury foreman. In addition, the warrant for her arrest on the hit and run charge was issued on September 26, 2014 by a state magistrate. The May 14, 2015 disposition notice for the hit and run charge indicates the hit and run charge was certified to the grand jury and that the next hearing for that charge was scheduled for July 13, 2015 in the circuit court. Other documents in the district court reference a warrant for murder, but the warrant itself is not in the record. The disposition notice for the murder charge, however, does not indicate the charge was certified. As noted previously, in Virginia, if a district court fails to certify a charge to the grand jury, "the Commonwealth may obtain an indictment from the grand jury charging an offense for which the district court has previously found no probable cause." *Felton*, 2020 U.S. Dist. LEXIS 121899, *28.

Next, Flanders alleges that her indictments were faulty and her double jeopardy rights were violated. It is clear that the requirement of indictment by a grand jury contained in the Fifth Amendment to the United States Constitution does not apply to the states. *Wilson v. Lindler*, 8 F.3d 173, 174 (4th Cir. 1993) (en banc). To the extent Flanders alleges a due process violation, "the Due Process Clause guarantees [a defendant] the 'right to reasonable notice of a charge against him, and an opportunity to be heard [in] his defense ....'" *Barbe v. McBride*, 477 F. App'x 49, 51

---

[9] In *Calderon v. Thompson*, 523 U.S. 538 the Court held that "[t]he miscarriage of justice exception is concerned with actual as compared to legal innocence," and "to be credible," a claim of actual innocence must be based on reliable evidence not presented at trial. Given the rarity of such evidence, "'in virtually every case, the allegation of actual innocence has been summarily rejected.'" 523 U.S. at 559 (citations omitted).

10

(4th Cir. 2012) (quoting *In re Oliver*, 333 U.S. 257, 273 (1948)). An indictment satisfies these constitutional requirements if it first "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974); see also *Branzburg v. Hayes*, 408 U.S. 665, 688 n. 25 (1972) (noting that the "grand jury is not part of the due process of law guaranteed to state criminal defendants by the Fourteenth Amendment") (citing *Hurtado v. California*, 110 U.S. 516 (1884)).

> Virginia Code § 19.2-220 sets forth the required contents of an indictment.
>
> The indictment or information shall be a plain, concise and definite written statement, (1) naming the accused, (2) describing the offense charged, (3) identifying the county, city or town in which the accused committed the offense, and (4) reciting that the accused committed the offense on or about a certain date. In describing the offense, the indictment or information may use the name given to the offense by the common law, or the indictment or information may state so much of the common law or statutory definition of the offense as is sufficient to advise what offense is charged.

The indictments complied with the requirements of Virginia Code § 19.2-220, which negates any possible due process concern.

Finally, any allegation that Flanders double jeopardy rights were violated has no merit. Although she did not pursue this claim in the Supreme Court of Virginia, her counsel did raise it in the Court of Appeals of Virginia, which found it to be without merit. The state appellate court first determined the legislature's intent before applying the test set forth in *Blockburger v. United States*, 284 U.S. 299, 304 (1932). The court held that it was "clear from the plain language of [18.2-33 and 46.2-894] that the legislature intended to create two distinct offenses. *Flanders*, 2018 Va. App. LEXIS 184, *4. Thereafter, it considered each offense in the abstract and applied the *Blockburger* test.

> An examination of the elements of Code §§ 18.2-33 and 46.2-894 reveals that each offense requires proof of a fact that the other does not. Felony murder requires proof

11

> that the death occurred during the commission of a felony. Felony hit and run does not require death. It does require proof that the defendant was the driver of a vehicle involved in an accident, that the driver knew or should have known someone was injured in the accident, and that the driver failed to stop and report the accident to the police. Felony murder does not require proof of any of those elements. Each offense contains elements that the other offense does not. Accordingly, the two statutes are not the same offense, and multiple punishments may be imposed for conduct that violates both statutes.

*Flanders*, 2018 Va. App. LEXIS 184, *4-5. The double jeopardy claim has no merit.

The next claim is premised upon Flanders misunderstanding of the nature of the proceedings in the general district court. As noted, "under Virginia law, 'it is well-established that the Commonwealth may obtain an indictment from the grand jury charging an offense for which the district court has previously found no probable cause.'" *Felton*, 2020 U.S. Dist. LEXIS 121899, *28.

The last claim concerns 'the way [the victim] died," and Flanders seems to suggest he died because the doctors "were not going to try to save him." [Dkt. No. 1 at 9]. Flanders offers no evidence in support of her conclusory statement and ignores the evidence at trial. At 5:30 a.m. on September 20, 2014, the victim was found. He was bleeding from his head, transported to the hospital and died approximately four hours later. (VSCT at 285-86). The victim was "awake and breathing" when he was found by the nearby Dominion Power employee, Johnny Burdette, and "was obviously in pain, a lot of pain." (2/9/16 Tr. at 46). The victim's autopsy established that the cause of death was "blunt force trauma to [the victim's] torso," (2/9/16 Tr. at 86), which is consistent with the physical evidence that found the victim's blood on the front bumper of the Dodge Durango she was driving that morning.

## V. Conclusion

For the foregoing reasons, the motion to dismiss [Dkt. No. 28] the petition must be granted, and the petition must be dismissed with prejudice. An appropriate Order shall issue.[10]

Entered this 3rd day of July, 2023.

Alexandria, Virginia

/s/
Anthony J. Trenga
Senior United States District Judge

---

[10] An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Petitioner fails to meet this standard.